**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **B.F., A MINOR, BY AND THROUGH** | ) | CASE NO.: |
| **HER GUARDIAN, B.B.** | ) | |
| c/o Edward L. Gilbert | ) | JUDGE: |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **B.B.** | ) | |
| c/o Edward L. Gilbert | ) | |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | **COMPLAINT** |
| | ) | **(Jury Demand Endorsed Herein)** |
| and | ) | |
| | ) | |
| **K.F.** | ) | |
| c/o Edward L. Gilbert | ) | |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MIDDLEBURY ACADEMY** | ) | |
| c/o Ron McDaniel, Board President | ) | |
| 88 Kent Street | ) | |
| Akron, Ohio 44305 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **MIDDLEBURY ACADEMY BOARD** | ) | |
| **OF DIRECTORS** | ) | |
| c/o Ron McDaniel, Board President | ) | |
| 88 Kent Street | ) | |
| Akron, Ohio 44305 | ) | |
| | ) | |

and                                                      )
                                                         )
**CAMBRIDGE EDUCATION**                                  )
**GROUP, LLC**                                           )
c/o Statutory Agent                                      )
CT Corporation System                                    )
4400 Easton Commons Way, Suite 125                       )
Columbus, Ohio 43219                                     )
                                                         )
and                                                      )
                                                         )
**ST. ALOYSIUS ORPHANAGE**                               )
c/o Statutory Agent                                      )
Everett F. Goulet Jr.                                    )
4721 Reading Road                                        )
Cincinnati, Ohio 45237                                   )
                                                         )
and                                                      )
                                                         )
**MAUREEN A. BUSINGER**                                  )
(Official Capacity and Individual                        )
Capacity)                                                )
Middlebury Academy                                       )
88 Kent Street                                           )
Akron, Ohio 44305                                        )
                                                         )
**WENDALL GARTH**                                        )
(Official Capacity and Individual                        )
Capacity)                                                )
Middlebury Academy                                       )
88 Kent Street                                           )
Akron, Ohio 44305                                        )
                                                         )
and                                                      )
                                                         )
**CHAD COLLINS**                                         )
(Official Capacity and Individual                        )
Capacity)                                                )
Middlebury Academy                                       )
88 Kent Street                                           )
Akron, Ohio 44305                                        )
                                                         )
and                                                      )
                                                         )
                                                         )
                                                         )

2

|  | ) |
|--|--|
| **MONIQUE SWAIN** | ) |
| (Official Capacity and Individual | ) |
| Capacity) | ) |
| Middlebury Academy | ) |
| 88 Kent Street | ) |
| Akron, Ohio 44305 | ) |
|  | ) |
| and | ) |
|  | ) |
| **WILLIAM ANGLE** | ) |
| (Official Capacity and Individual | ) |
| Capacity) | ) |
| Middlebury Academy | ) |
| 88 Kent Street | ) |
| Akron, Ohio 44305 | ) |
|  | ) |
| and | ) |
|  | ) |
| **MATTHEW HICKIN** | ) |
| (Official Capacity and Individual | ) |
| Capacity) | ) |
| Middlebury Academy | ) |
| 88 Kent Street | ) |
| Akron, Ohio 44305 | ) |
|  | ) |
| and | ) |
|  | ) |
| **DEBRA GLENN** | ) |
| (Official Capacity and Individual | ) |
| Capacity) | ) |
| Middlebury Academy | ) |
| 88 Kent Street | ) |
| Akron, Ohio 44305 | ) |
|  | ) |
| and | ) |
|  | ) |
| **BRIANA LOWDERMILK** | ) |
| (Official Capacity and Individual | ) |
| Capacity) | ) |
| Middlebury Academy | ) |
| 88 Kent Street | ) |
| Akron, Ohio 44305 | ) |
|  | ) |
| and | ) |
|  | ) |

|                                                                 |     |
|-----------------------------------------------------------------|-----|
| **CHRISTOPHER HENDON** (A750288)                                | )   |
| (Official Capacity and Individual                               | )   |
| Capacity)                                                       | )   |
| Lorain Correctional Institution                                 | )   |
| 2075 S. Avon-Belden Road                                        | )   |
| Grafton, Ohio 44044                                             | )   |
|                                                                 | )   |
| and                                                             | )   |
|                                                                 | )   |
| **JOHN/JANE DOE TEACHER**                                       | )   |
| (Official Capacity and Individual                               | )   |
| Capacity)                                                       | )   |
| Middlebury Academy                                              | )   |
| 88 Kent Street                                                  | )   |
| Akron, Ohio 44305                                               | )   |
|                                                                 | )   |
| and                                                             | )   |
|                                                                 | )   |
| **JOHN/JANE DOE EMPLOYEE**                                      | )   |
| (Official Capacity and Individual                               | )   |
| Capacity)                                                       | )   |
| Middlebury Academy                                              | )   |
| 88 Kent Street                                                  | )   |
| Akron, Ohio 44305                                               | )   |
|                                                                 | )   |
|                              Defendants.                        | )   |

## PRELIMINARY STATEMENT

1.      Plaintiffs in this civil rights action are an African-American child ("B.F.") with learning disability attending school at Middlebury Academy ("Middlebury") and her mother ("B.B."), and father ("K.F.").

2.      Middlebury Academy and its employees unlawfully, injuriously, and punitively permitted the abuse of B.F., and created a harassing, intimidating, and discriminatory environment for B.F. while she was a student at Middlebury Academy.

4

3.      Middlebury Academy Board of Directors ("Board") Cambridge Education Group, LLC ("Cambridge"), and St. Aloysius Orphanage ("St. Aloysius") failed to supervise, train, monitor, and/or maintain protective measures against violent and abusive individuals on school grounds.

4.      Defendants' failure to protect B.F. on Middlebury school grounds led to the abuse of B.F. by a stranger impersonating a police officer who had a limited affiliation with Middlebury Academy.

5.      Failure on the part of Middlebury Academy Principal Wendall Garth ("Garth") to supervise and monitor Middlebury operations gave the abusive individual the opportunity to enter Middlebury and abuse B.F.

6.      Defendant, Christopher Hendon ("Hendon"), is an individual who was sentenced in Summit County Court of Common Pleas on or about March 7, 2018 for engaging in illegal activity including impersonating a police officer, kidnapping, and abduction.

7.      B.F., who is a minor, was subjected to physical and/or emotional abuse by Hendon, with such abuse either deliberately ignored or condoned by Co-Defendants. The actions of the Defendants were primarily earmarked for the poor marginalized African-American children.

8.      The violence and abuse had no relationship whatsoever to any legitimate educational or other objective but rather was nothing more than intentional painfully injurious conduct toward B.F. and his misled guardian. Hendon's conduct toward B.F., and the Defendants' acquiescence and cover-up, were inexcusable.

9.      Defendants' unlawful conduct identified in this Complaint was not in furtherance of efforts to control or discipline students or maintain order or control in the classroom. Instead, the injuries to B.F. were caused by the Defendants' conscious and flagrant indifference to Plaintiffs' rights.

10.     Plaintiffs bring this action to seek and obtain monetary compensatory and punitive damages, as well as injunctive relief, for the intentional violations of their rights under the United States Constitution, federal law and state law.

## JURISDICTION AND VENUE

11.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

12.     Jurisdiction is invoked pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C.§ 1331, §1343 and §1367 as one or more of the claims arise "under the Constitution, laws, or treaties of the United States."

13.     Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

14.     Venue is conferred under 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

15.     All jurisdictional requirements have been met. Plaintiffs are not required to exhaust administrative remedies because the causes of action are discrimination-based. See *Fry v. Napoleon Community Schools*,137 S.Ct. 743, 197 L.Ed.2d 46, 2017 WL 685533 (S.Ct. 2017).

## **PARTIES**

16.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

17.    B.F. is an African-American U.S. minor citizen residing in Akron, Summit County, Ohio and at all relevant times, has been a student attending Middlebury Academy.

18.    B.B. is an African-American U.S. citizen residing in Akron, Summit County, Ohio.

19.    K.F. is an African-American U.S. citizen residing in Akron, Summit County, Ohio.

20.    B.F. B.B. and K.F.'s identities and address are withheld due to the confidential nature of this proceeding and fear of retaliation from persons in the community that are close to several Co-Defendants.

21.    Defendant, Middlebury Academy ("Middlebury"), with its principal place of business located at 88 Kent Street, Akron, Ohio 44305, is a charter school organized under the laws of the State of Ohio and can sue and be sued pursuant to R.C. 3314.01.

22.    Defendant, Middlebury Academy Board of Directors ("Board"), through its President, is the governing body of Middlebury Academy, a charter school organized under the laws of the State of Ohio with its principal place of business located at 88 Kent Street, Akron, Ohio 44305. The Board is an entity operating under the laws of the State of Ohio and is authorized to sue and be sued as an entity for its acts and those of its agents and employees.

23.     Defendant, Cambridge Education Group, LLC ("Cambridge"), is a Florida limited liability company authorized to do business in the State of Ohio and is the entity that provides management, educational, and financial services to Middlebury. Cambridge and Middlebury entered into a Renewal Management Agreement in June 2016. Under the Management Agreement, Cambridge supervises and manages Middlebury personnel.

24.     Defendant, St. Aloysius Orphanage ("St. Aloysius"), is an Ohio corporation with its principal place of business located at 4721 Reading Road, Cincinnati, Ohio 45237. St. Aloysius is the authorized sponsor of Middlebury Academy under R.C. Chapter 3314. St. Aloysius provides training and monitors Middlebury's compliance with the laws applicable to the school. St. Aloysius and Middlebury entered into a Charter on June 16, 2015.

25.     Upon information and belief, during all relevant periods of time herein, Defendant, Maureen Businger ("Businger"), is a U.S. citizen and at all relevant times the Executive Director at Middlebury Academy charged with the responsibility of assuring that students are properly cared for, teachers properly perform their duties, and policies, procedures, and programs that protect students from abuse while they attend said school are properly implemented. Businger is sued in her individual and official capacity.

26.     Upon information and belief, during all relevant periods of time herein, Defendant, Wendall Garth ("Garth"), is a U.S. citizen and at all relevant times the Principal at Middlebury Academy charged with the responsibility of assuring that students are properly cared for, teachers properly perform their duties, and

policies, procedures, and programs that protect students from abuse while they attend said school are properly implemented. Garth is sued in his individual and official capacity.

27.     Upon information and belief, during all relevant periods of time herein, Defendant, Chad Collins ("Collins"), is a U.S. citizen and at all relevant times was the security guard at Middlebury, charged with the responsibility of assuring that students are properly supervised and protected from abuse while in the building. Collins is sued in his individual and official capacity.

28.     Upon information and belief, during all relevant periods of time herein, Defendant, Monique Swain ("Swain"), is a U.S. citizen and at all relevant times was the IEP teacher of B.F., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in her class. Swain is sued in her individual and official capacity.

29.     Upon information and belief, during all relevant periods of time herein, Defendant, William Angle ("Angle"), is a U.S. citizen and at all relevant times was a teacher of B.F., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in his class. Angle is sued in his individual and official capacity.

30.     Upon information and belief, during all relevant periods of time herein, Defendant, Matthew Hickin ("Hickin"), is a U.S. citizen and at all relevant times was a teacher of B.F., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in his class. Hickin is sued in his individual and official capacity.

31.     Upon information and belief, during all relevant periods of time herein, Defendant, Debra Glenn ("Glenn"), is a U.S. citizen and at all relevant times was a teacher at Middlebury, charged with the responsibility of assuring that students are properly supervised and protected from abuse while in her class. Glenn is sued in her individual and official capacity.

32.     Upon information and belief, during all relevant periods of time herein, Defendant, Briana Lowdermilk ("Lowdermilk"), is a U.S. citizen and at all relevant times was the homeroom teacher of B.F., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in her class. Lowdermilk is sued in her individual and official capacity.

33.     Upon information and belief, Defendant, Christopher Hendon ("Hendon"), is a U.S. citizen and at all relevant times impersonated a police officer and was granted permission to enter Middlebury Academy to promote his "scared straight" program that included the abuse of minor students on and off Middlebury property.

34.     Defendant, John/Jane Doe Teacher, at all relevant times worked for Middlebury Academy and the Board at Middlebury and was charged with the responsibility of assuring that students are properly supervised and protected from abuse while in his/her class.  John/Jane Doe Teacher is sued in his or her individual and official capacity.

35.     Defendant, John/Jane Doe Employee at all relevant times worked for Middlebury Academy and the Board at Middlebury and allowed Hendon access to the school

building.  John/Jane Doe Employee is sued in his or her individual and official
capacity.

## **STATEMENT OF FACTS**

36.  Plaintiffs reincorporate by reference the allegations set forth above as if fully
rewritten herein.

37.  B.F. is an African-American minor child.

38.  B.B. is the African-American mother and guardian of B.F.

39.  B.F., at all relevant times, was a student at Middlebury Academy.

40.  B.F. was diagnosed with having learning disorders that impeded her learning.

41.  At all relevant times herein, B.F. had an Individualized Education Program
("IEP"). An IEP is a written statement of the educational program designed to
meet a child's individual needs. Every child who receives special education
services must have an IEP.

42.  On or about March 29, 2017, Hendon had an assembly for boys at Middlebury in
the cafeteria/gym. Several teachers were at the assembly.

43.  On or about March 29, 2017, B.F. witnessed her teacher, Mr. Angle, telephone
Collins to come to his classroom because a child would not leave his classroom.

44.  Collins appeared with Hendon.

45.  Hendon told the child to get her belongings.

46.  The child talked back to Hendon, so he cursed at the child, slammed her to the
ground, and handcuffed her behind her back.

47.  Hendon then pulled out his taser and pointed his beam light on her and threatened
that he was going to tase the child.

48.     Collins just stood there. Approximately, thirteen kids were in the classroom watching.

49.     Hendon then picked her up and they left the classroom.

50.     Mr. Angle then told B.F. to take the child's bookbag to her.

51.     Hendon would not let B.F. give the bookbag to her. Hendon said "take your ass on."

52.     B.F. rolled her eyes because she was just trying to give the child the bookbag.

53.     Hendon then stated "I'll be looking for you."

54.     On or about April 3, 2017, Hendon came into Mr. Hickin's classroom without being called. Collins was with him.

55.     A child was sitting on the heating vent doing her work, which Mr. Hickin permitted.

56.     Hendon told her to get off the vent, but she refused.

57.     Hendon pulled the child off of the vent by her shoulders and handcuffed her behind her back.

58.     Hendon then slammed the child on the ground onto her stomach.

59.     B.F. smacked her lips at what she saw and Hendon said "Oh yeah, I've been looking for you."

60.     Collins helped the child get up.

61.     Collins was then trying to help control the girl.

62.     Collins then removed the child from classroom. Hendon stayed.

63.     B.F. smacked her lips again. Hendon then told B.F. to stand up.

64.     B.F. refused at first, but then decided to stand up, but Hendon did not feel she was standing up fast enough.

65.     Hendon then slammed B.F. across the table by grabbing both of her shoulders.

66.     He then put handcuffs on her.

67.     He tightened the cuffs as they walked out of the classroom. She asked why he tightened them.

68.     Hendon told B.F. to shut up and cursed at her by stating, "God damn fool kids" "I will fuck you up," and "mother fuckers need to sit down and shut up."

69.     There were 15 to 17 kids in the classroom who witnessed the incident.

70.     B.F. passed several classrooms where the doors were open.

71.     He lifted the cuffs up, which hurt her more.

72.     Hendon then took B.F. to a teacher's room down the hall.

73.     Hendon threw B.F. in the room with the other child he had previously removed from Hickin's classroom.

74.     Hendon pushed B.F. into some chairs.

75.     The other child was in another chair crying in handcuffs.

76.     Hendon, B.F., and the other child were alone in the room.

77.     After about five minutes, B.F. asked to call her mom. Hendon left the room.

78.     Miss Glenn came into the room to get something and left. She said "Guys do better than this." She then shut the door behind her.

79.     Hendon returned.

80.     B.F. said again "Can I call my mom or dad? Hendon said "No, I will do it on my time."

81.     Miss Swain came into the room about two minutes later. She said "You guys have to stop being disrespectful or this would not be happening." Swain then left.

82.     Hendon then called B.F.'s mother, B.B and was cursing on the phone to B.B.

83.     B.B. became extremely upset and she and K.F. decided to go directly to Middlebury.

84.     B.F. did not give Hendon her mother's phone number.

85.     B.F. asked for the handcuffs to be taken off. He said "No, I will take off the goddamn handcuffs when I'm ready."

86.     Hendon finally took the handcuffs off about five minutes after the call ended with B.B.

87.     Hendon gave them a speech: "You have to do right. I was a troubled kid."

88.     Swain came back into the room and also gave the girls a speech. She said "Do better. He's here to help you."

89.     Hendon then showed them a video where he said he pulled someone over and tased him.

90.     Hendon then showed them kids on his Facebook page.

91.     Swain never objected to what Hendon did or said, it appeared that she agreed with Hendon's actions.

92.     The two girls then went back to class.

93.     B.B. and K.F. arrived at the school. Collins was not sitting at the door; therefore, a young lady buzzed them in.

94.     They were told that Akron Police and security were both there.

95.     Principal Garth came out and got B.B. and K.F. and walked them upstairs and asked them to have a seat in the computer lab. Garth never came back.

96.     Hendon and Collins then came into the room. Hendon introduced himself as a

        police officer.

97.     B.F. soon followed after Swain came and got her.

98.     Hendon explained the incident to B.B. and K.F.

99.      Hendon said "We are just trying to get them to act right." "Teachers had problems with goddamn kids."

100.    Hendon then talked about his programs and showed them a video of boys at Middlebury at an assembly that he put together.

101.    He also talked about how he would have kids pick up trash and he would transport kids to the police station and Dan Street.

14

102.    He said that he could charge the girls with resisting arrest and assault if they did not get their act together.

103.    Hendon further told them that he was in the process of setting up a program for the girls at Middlebury to have an assembly (which occurred a few days later on April 5, 2017).

104.    Swain also came in and indicated the kids are very bad at that school and Hendon was "helping them clean up the place." She made a comment "We're letting him handle it."

105.    B.F., B.B. and K.F. were in the room with Hendon for approximately one hour.

106.    B.F. went back to class and B.B. and K.F. went home.

107.    Hendon was never an administrator or employee at Middlebury.

108.    Hendon was wearing, and often wore on Middlebury property, an all black police uniform with a badge that was partly covered with black tape.

109.    Hendon openly carried a gun and held himself out as an officer of the peace/resource officer.

110.    Hendon had no credentials or training as a law enforcement or school resource officer, and Defendants knew or should have known that Hendon had lacked the proper credentials and training to be a law enforcement officer. However, Defendants held Hendon out to the community as having proper credentials.

111.    Defendants falsely represented Hendon to B.B.

112.    Most White students were not similarly treated.

113.    Upon information and belief, all named defendants directly witnessed Hendon abuse children or had knowledge of such abuse.

114.    On April 24, 2017, Hendon was arrested for impersonating a law enforcement officer/ resource officer for Middlebury.

115.    Hendon was indicted on 61 felony counts and later pled guilty to seven counts of kidnapping, six counts of abduction, fifteen counts of impersonating a police officer and three counts of illegal conveyance of a weapon into school.

116.    On or about March 7, 2018, Hendon was sentenced to 5 years, 11 months years in prison.

117.    B.F. subsequently transferred to the Akron Public School District and is no longer a student at Middlebury.

118.    Ever since the incident involving Hendon, B.B. has observed B.F. struggle more with her behavior and learning.

**FIRST CAUSE OF ACTION**
**Denial of 14th Amendment Right (Substantive Due Process)**

119.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

120.    Plaintiffs bring this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

121.    Plaintiff brings this claim against all Defendants.

122.    Defendants are persons for purposes of 42 U.S.C. § 1983 liability. See *Riester v. Riverside Cmty. Sch.*, 257 F.Supp. 2d 968, 971 (S.D. Ohio 2002).

123.    Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of Defendants' misconduct.

16

124.    By their actions, as described herein, Defendants, as a part of a custom, policy and/or practice, subjected B.F. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law. In particular, as a student in a public charter school, Plaintiff has a liberty interest in personal security and freedom from restraint and infliction of pain through a course of conduct that shocks the conscience.

125.    Under Ohio Rev. Code Ann. §§ 3314 and 3313.64, the State of Ohio confers a right upon B.F. to receive a free public education.

126.    Such a right is a property and/or liberty interest, within the meaning of the Fourteenth Amendment of the United States Constitution.

127.    Under the Sponsor contract with St. Aloysius, Middlebury is required to abide by Ohio Rev. Code Ann. § 3313.666, which entitles B.F. to receive an education in a school environment that is free of harassment, intimidation, or bullying on school property.  Moreover, Defendants are required to create and maintain procedures that prohibit harassment, intimidation, or bullying, and require school personnel to report prohibited incidents.

128.    Accordingly, Plaintiffs have a property and/or liberty interest[1] in such a school environment that is included within the substantive component of the Fourteenth Amendment's Due Process Clause to the U.S. Constitution.

---

[1] Protected interests in property "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

129.     Plaintiffs state that Defendants used their authority as Middlebury employees and administrators to arbitrarily deprive B.F. of this interest and her interest in bodily integrity.[2]

130.     Defendant Businger, at all relevant times, was the Executive Director at Middlebury and was responsible for supervising and overseeing the policies, procedures, and operations of Middlebury, as well as creating and implementing the school's policies.

131.     Defendant Garth, at all relevant times, was the Principal at Middlebury and was responsible for supervising and overseeing the policies, procedures, and operations of Middlebury, as well as creating and implementing the school's policies.

132.     Defendants had a duty to implement and follow policies, practices, and procedures which respected and preserved Plaintiffs' constitutional rights. Defendants failed to implement such policies and/or the policies implemented by Defendants were constitutionally inadequate.

133.     Plaintiffs state that Defendants Businger and Garth, through their affirmative actions, ignored policies and procedures and/or implemented policies and procedures that infringed on Plaintiffs' constitutional rights, and directly and intentionally placed B.F. in a position where there would be a risk to her health and safety.

---

[2] "A governmental actor may, however, violate the due process clause by allowing a third party to harm a person in government custody…or by creating a particular danger to the victim. This latter theory of liability… has been recognized in this Circuit as a viable species of substantive due process claim." *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1065-67 (6th Cir.1998).

134. In other words, Defendant Businger and Garth's deliberate indifference endangered B.F., and created a risk of harm by permitting Hendon, a private person with no law enforcement or administrative background, to harass, intimidate, and bully B.F. in an unsupervised environment on Middlebury property.  Defendants Businger and Garth knew of and disregarded the risk Hendon posed to B.F.'s safety, thus creating the danger.

135. Plaintiffs state that Defendant teachers, administrators, and staff, through their affirmative actions and deliberate indifference, ignored policies and procedures and/or implemented policies and procedures, and endangered B.F.  By allowing Hendon, a private person, to assault and handcuff B.F. and take her out of the classroom without any supervision, Defendants endangered B.F.'s health and safety. Defendants knew of and disregarded the risk Hendon posed to B.F.'s safety, thus creating the danger.

136. Plaintiffs further state that Defendants violated a fundamental right granted to B.B.

137. Defendants knowingly permitted, authorized, and sanctioned harm to B.F.

138. Defendants' actions and/or omissions, as described herein, were taken in accordance with Middlebury's custom and/or policy, or were ratified by Defendants, such that Defendants adopted such practices, customs, or policies.

139. Defendants knew or reasonably should have known about the abusive practices with respect to B.F. The abusive and unconstitutional practices Defendants regularly undertook are so well settled as to constitute a custom or usage at Middlebury. Yet, Defendants failed to take any affirmative actions to provide for

the safety and well-being of African-American children with disabilities in
Defendants' care, including B.F.

140.    Defendants' actions, as described above, were objectively unreasonable, willful
and wanton, and shocking to the conscience in light of the facts and circumstances
surrounding the assault inflicted on B.F., an African-American child with
disabilities, and entrusted to Defendants' care.

141.    The conduct of the individual Defendants described herein violated clearly
established rights of Plaintiffs of which reasonable people in the Defendants'
position knew or should have known.

142.    Defendants knew or should have known that the State of Ohio Department of
Education policies and state law forbade the use of unreasonable and unnecessary
force. Defendants nonetheless continued these customs, policies, and/or practices.

143.    Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

144.    B.F., like all United States citizens, has the substantive due process constitutional
right to personal security and bodily integrity.

145.    B.F. also has the substantive due process constitutional right to be free from
arbitrary government conduct that lacks all socially redeeming value.

146.    The force applied caused injury so severe, was so disproportionate to the need
presented, and was so inspired by malice or sadism rather than a merely careless
or unwise excess of zeal that it amounted to a brutal and inhumane abuse of
official power literally shocking to the conscience.

147.    Defendants deprived B.F. of her constitutional right to substantive due process by
engaging in arbitrary actions and omissions towards her that was of such an

extreme nature as to shock the conscience. Garth, Lowdermilk, and Hendon acted unlawfully and the Board, Cambridge, and St. Aloysius acquiesced as supervisors and final policymakers for Middlebury.

148.    Defendants' conduct amounted to a tacit authorization of the abuse.

149.    Defendants acted under color of law to deprive Plaintiffs of their protected property interests under the Due Process Clause.

150.    None of the Defendants were pursuing any legitimate governmental purpose by allowing Hendon to verbally and physically intimidating, harassing, and abusing B.F.

151.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages, including injuries to B.F.'s person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages.

152.    The Supreme Court has recognized a "fundamental right of parents to make decisions concerning the care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, (2000).

153.    Hendon was not employed by Middlebury nor does he have administrative or law enforcement training.

154.    Defendants usurped B.B.'s fundamental right to make decisions concerning the care, custody, and control of B.F. by allowing Hendon to discipline B.F. without informed consent, and allowing Hendon to take control over B.F. without informed consent.

155.     Defendants violated B.B.'s recognized fundamental right by refusing to ask for her input or following school disciplinary procedure.

156.     **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, B.F.'s substantive due process rights, and B.B. and K.F.'s fundamental right to make decisions concerning control over B.F.  Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants in their official and individual capacity.

## <u>SECOND CAUSE OF ACTION</u>
**Denial of Plaintiffs' 14th Amendment Right (Equal Protection of the Law)**

157.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

158.     B.F. and her guardian, like all United States citizens, have the right to equal protection of the laws.

159.     Without any lawful basis, Defendants treated B.F. differently than they treated typically developing children and parents and guardians of typically developing children.

160.     With regard to how Defendants abusively and with deliberate indifference treated B.F. as described in this Complaint, Defendants had no lawful basis whatsoever.

161.    By their actions, as described herein, Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected B.F. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

162.    Defendants discriminated against B.F., in whole or in part, because of her status as an African-American child with a disability, denying her equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

163.    B.F. was assaulted based, in whole or in part, due to her race, African-American.

164.    B.F. was assaulted based, in whole or in part, on her disabilities or manifestations of her disabilities.

165.    Students without disabilities were not subjected to the abuses B.F. was subjected to, as described herein. This difference in treatment was due, in whole or part, to B.F.'s status as a student with disabilities.

166.    Non-minority students were not subjected to the abuses B.F. was subjected to, as described herein. This difference in treatment was due, in whole or part, to B.F.'s race, African-American.

167.    Non-disabled or non-minority students were not subjected to Hendon's maltreatment. This abusive and illegal treatment was reserved solely for children with disabilities and/or minorities.

168.    Defendants' decision to treat disabled students, including B.F., worse than the rest of the student population is unconstitutional.

169.    Defendants' decision to treat minority students, including B.F., worse than the rest of the student population is unconstitutional.

23

170.     Defendants' actions or omissions shock the conscience and cannot be justified as relating to any rational basis.

171.     The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law.

172.     Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating disabled students and their families differently than typically developing children and their families.

173.     Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating minority students and their families differently than non-minority children and their families.

174.     Defendants' intentional disparate treatment of Plaintiffs violated their right to equal protection of the laws.

175.     The actions of Defendants, as described herein, intentionally deprived Plaintiffs of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused other damages in amounts to be ascertained at trial.

176.     **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, B.F.'s substantive due process rights, and B.B. and K.F.'s fundamental right to make decisions concerning control over B.F.  Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney

fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants in their official and individual capacity.

## THIRD CAUSE OF ACTION
### Supervisory Liability - Failure to Train and Supervise (42 U.S.C. § 1983)

177.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

178.    The Supervisory Defendants (the Board, Cambridge, St. Aloysius, Businger, and Garth) each have duties to train and supervise teachers and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision.

179.    Each of the Supervisory Defendants failed to discharge these duties.

180.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

181.    As a result, B.F. was harmed when Defendants allowed Hendon to verbally and physically assault B.F.

182.    The assault has caused B.F. significant trauma.

183.    Had the Supervisory Defendants made any effort to properly train and supervise B.F.'s teachers and other staff, B.F. would not likely have suffered this egregious and conscience-shocking abuse by Hendon, nor would B.F. have likely sustained the damages that she has sustained and will sustain in the future.

184.    The Supervisory Defendants' failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of B.F.'s constitutional rights as described herein.

185.     The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

186.     The acts and/or omissions of the Supervisory Defendants caused B.F.'s damages in that she suffered extreme physical and mental pain and the lasting damage that she will endure in the future.

187.     The actions of the Supervisory Defendants, as described herein, deprived B.F. of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other lasting damages.

188.     **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, B.F.'s substantive due process rights, and B.B. and K.F.'s fundamental right to make decisions concerning control over B.F.  Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants in their official capacity and individual capacity.

### FOURTH CAUSE OF ACTION
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. §§ 794 et seq.)**

189.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

190.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794

("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104,

prohibit discrimination against persons with disabilities. B.F. has learning

disabilities as alleged previously and is a protected person under Section 504.

191.     Section 504 prohibits the exclusion from the participation in, or being denied the

benefits of, or being subjected to discrimination under, any program or activity

receiving federal financial assistance. Congressional authority to condition federal

funding under this Act is derived from the enumerated powers contained in

Article 1, Section 8 of the U.S. Constitution.

192.     Middlebury is a recipient of federal financial assistance.

193.     The practices described above, including but not limited to, permitting Hendon to

assault B.F., were discriminatory and denied B.F. the benefits of participation in a

public school education.

194.     Students without disabilities were not subjected to the abuses B.F. was subjected

to, as described herein. This difference in treatment was due, in whole or part, to

B.F.'s status as a student with disabilities. Non-disabled were not subjected to

Hendon's maltreatment. This abusive and illegal treatment was reserved solely for

B.F., a child with disabilities.

195.     Defendants have violated B.F.'s rights under Section 504 and the regulations

promulgated thereunder by denying B.F. the benefits of receiving full and equal

access to the public education programs and activities offered at Middlebury.

196.     Defendants' practices were intentionally discriminatory and were taken with

deliberate indifference to the strong likelihood that the practices would result in a

violation of B.F.'s federally protected rights.

197.     As a direct and proximate result of Defendants' violation of Section 504, B.F. has

suffered, continues to suffer, and will suffer in the future injuries to her person

including, but not limited to, pain, humiliation, anxiety, mental anguish,

emotional distress, and damage to her personal relations in amounts to be

ascertained according to proof at trial.

198.     **WHEREFORE**, Plaintiffs demand compensatory damages in the amount of

$1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, and other

nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as

this Honorable Court deems just and proper against Defendants in their official

capacity only.

### FIFTH CAUSE OF ACTION
**Violation of The Americans With Disabilities Act ("ADA")**
**(42 U.S.C. §§12131 et seq.)**

199.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

200.     Title II of the ADA, 42 U.S.C. §12131 et seq. and the regulations thereunder, 28

C.F.R. Part 35, governing state and local governmental entities, protects persons

from discrimination on the basis of disability by public entities. B.F. has learning

disabilities as alleged previously and is a protected person under the ADA.

201.     The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

202.     The discriminatory practices described herein excluded B.F. from participating in and receiving the benefits of a public school education.

203.     Defendants' practices were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of B.F.'s federally protected rights.

204.     Defendants violated B.F.'s rights under the ADA and the regulations promulgated thereunder, denying B.F. the benefits of the services, programs, and activities to which she was otherwise entitled. B.F. was mistreated in violation of law as a direct result of her disabilities, and the manifestation of these disabilities.

205.     Students without disabilities were not subjected to the abuses B.F. was subjected to, as described herein. This difference in treatment was due, in whole or part, to B.F.'s status as a student with disabilities. Non-disabled were not subjected to Hendon's maltreatment. This abusive and illegal treatment was reserved solely for B.F., a child with disabilities.

206.     As a direct and proximate result of Defendants' violation of the ADA, B.F. has suffered and continues to suffer injuries to her person, including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress and damage to his personal relations in amounts to be ascertained according to proof at trial.

207.     **WHEREFORE**, Plaintiffs demand compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants in their official capacity only.

## SIXTH CAUSE OF ACTION
### (Violation of Title VI of the Civil Rights Act of 1964)

208.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

209.    Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Defendants receive Federal financial assistance and are subject to Title VI requirements.

210.    B.F. is African-American; therefore, she is in a protected class.

211.    B.F. has a protected right to be free from race-based discrimination and harassment under Title VI of the Civil Rights Act of 1964.

212.    B.F. was subjected to intentional discrimination, harassment, and assault due to her race.

213.    Most, if not all, the students affected by the "Hendon scared straight" program were African-American.

214.    This race-based harassment/assault created a hostile educational environment.

215.    As a direct and proximate cause of the hostile educational environment that was allowed to flourish due to Defendants' deliberate indifference, B.F. experienced

such severe, pervasive, and/or objectively offensive race-based harassment that she was deprived of equal access to educational benefits or opportunities.

216. As a result of Defendants' failure to comply with its duty under § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., and its implementing regulations, B.F. has suffered damages including special and general damages according to proof.

217. **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against all Defendants in their official capacity only.

## SEVENTH CAUSE OF ACTION
### Failure to Report Child Abuse
### (Ohio Rev. Code 2151.421)

218. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

219. Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function pursuant to Ohio Revised Code 2744.02 (B)(4).

220. B.F. was an abused child under R.C. § 2151.031.

221. Defendants were aware that Hendon put handcuffs on B.F. in addition to handcuffing other children while they were on school property.

222.   Defendants were aware that Hendon used profanity in front of B.F. at Middlebury.

223.   Defendants were aware that B.F. was an abused child under the statute.

224.   This child abuse was not reported by Defendants, as required under R.C. § 2151.421. As a result of these Defendants' failure to report child abuse, B.F. suffered further injury, including mental anguish and severe emotional injury.

225.   Despite the plain language and meaning of R.C. § 2151.421, Defendants failed to report the abuse to the public children services or local law enforcement.

226.   As a school authority and employee acting in his official and individual capacity, Defendants Businger and Garth knew or had reasonable cause to suspect that B.F. suffered physical and mental injury that reasonably indicated abuse when Defendant gave Hendon permission to take B.F. out of her classroom and handcuff her without any supervision from Middlebury employees or teachers. Plaintiffs further state that Defendants failed to immediately report this abuse.

227.   As school teachers, administrators, and employees acting in their official and individual capacity, Defendants had reasonable cause to suspect that B.F. suffered physical and mental injury that reasonably indicated abuse when Defendants previously witnessed Hendon handcuffing innocent children at Middlebury, and allowed Hendon to take B.F. out of Defendant's classroom. Plaintiffs further state that Defendants failed to immediately report suspected abuse.

228.   Defendants knew that Hendon's physical and verbal abuse of B.F. constituted child abuse against her under R.C. § 2151.031. However, Defendants did not report the child abuse, as required by R.C. § 2151.421.

229.    Defendants are liable to Plaintiffs, because their conduct falls outside of the protections afforded to them by the General Assembly, and their failure to report B.F.'s abuse caused further injury to Plaintiffs.

230.    **WHEREFORE**, by failing to report suspected child abuse pursuant to Ohio Revised Code § 2151.42, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants.

## EIGHTH CAUSE OF ACTION
### Negligence

231.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

232.    Defendants were negligent in conducting a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or were negligent in conducting a governmental function pursuant to Ohio Revised Code 2744.02 (B)(4).

233.    Defendants have a duty of care to take reasonable care to ensure that their acts or omissions do not cause reasonably foreseeable injury to their pupils.

234.    Defendants further have a duty to maintain custody and control of the Middlebury building and supervise the student body.

235.    Defendants breached that duty by allowing Hendon to gain access to the building and B.F.'s classroom, and permitting Hendon to interact with and assault B.F. in an unsupervised area of the building.

236.     Plaintiffs suffered personal injury as a direct and proximate result of Defendants' failure to exercise reasonable care in the performance of their duties.

237.     In the alternative, Defendants, by maintaining custody and control of the building and student body, engaged in an activity that is outside of the scope of their responsibilities and obligations, which suggests that the activity was outside of the scope of their employment, and thus proprietary in nature, rendering Defendants liable to Plaintiffs for the injuries that their conduct caused Plaintiffs.

238.     In the alternative, to the extent it is determined that Defendants authorized and/or approved and/or permitted Hendon to gain access to the building and student body, Defendants' activities are not functions expressly delegated to them and are not activities performed in connection with either a governmental or proprietary function. Defendants, therefore, are liable for their willful and wanton conduct, because their conduct falls outside of the protections afforded to them by the General Assembly and because the conduct caused injuries to Plaintiffs.

239.     Defendants' actions or omissions produced Plaintiffs' injuries. Plaintiffs would not have suffered their injuries, but for Defendants' behavior.

240.     An ordinarily prudent person could have reasonably foreseen that Defendants' conduct would likely lead to Plaintiffs suffering some injury.

241.     Defendants' actions demonstrate recklessness, malice, willful and wanton conduct.

242.     As a proximate cause of Defendants' negligent conduct, Plaintiffs have suffered injuries including serious emotional distress.

243.     **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants.

### NINTH CAUSE OF ACTION
#### Negligence *Per Se* - Ohio Revised Code § 2919.22

244.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

245.     Ohio Revised Code § 2919.22 specifically mandates that no person having custody or control of a child under 18 years of age shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. R.C. § 2919.22 further mandates that no person shall abuse such child; torture or cruelly abuse such child; or administer corporal punishment or other physical disciplinary measure, or physically restrain such child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.

246.     Defendants, by virtue of their relationship with B.F., had custody and control of B.F. during school hours.

247.     Defendants' actions taken against B.F. were in direct violation of R.C. § 2919.22.

248.     B.F. experienced physical pain, trauma and significant emotional distress as a result of allowing Hendon to come in contact with B.F.

249.     Defendants had a duty to protect B.F. from assault as prohibited by Ohio law.

35

250.    Said actions are a violation of Ohio Revised Code § 2903.13 (assault) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

251.    Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

252.    As a direct consequence of these actions, B.F. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which she is entitled to compensatory damages and attorney's fees.

253.    **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper.

## TENTH CAUSE OF ACTION
### Negligence *Per Se* - Ohio Revised Code § 2151.421

254.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

255.    Ohio Revised Code § 2151.421 specifically mandates that Defendants were to report Hendon's conduct to the appropriate authorities.

256.    Defendants intentionally and recklessly failed to timely report Hendon's conduct to the appropriate authorities.

257.    R.C. 2151.421 imposed that specific and mandatory reporting duty on the Defendants for the safety and protection of B.F.

258.    Defendants intentionally and recklessly failed to comply with the mandates of R.C. 2151.421.

259.    As a direct and proximate cause of the Defendants' intentional and reckless violation of R.C. 2151.421, the Plaintiff children have suffered the type of injuries the statute was designed to protect against.

260.    The Defendants' violation of R.C. 2151.421 is a misdemeanor of the first degree.

261.    The Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

262.    **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## ELEVENTH CAUSE OF ACTION
### Negligent Training/Supervision under Ohio Law

263.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

264.    The Supervisory Defendants (the Board, Cambridge, St. Aloysius, Businger, and Garth) each have duties to train and supervise teachers and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision.

265.    Each of the Supervisory Defendants failed to discharge these duties.

266.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

267.    As a result, B.F. was harmed when Defendants allowed Hendon to verbally and physically assault B.F.

268.     The assault and battery have caused B.F. significant trauma.

269.     Had the Supervisory Defendants made any effort to properly train and supervise Middlebury personnel, B.F. would not likely have suffered this egregious and conscience-shocking abuse by Hendon, nor would B.F. have likely sustained the damages that she has sustained and will sustain in the future.

270.     The Supervisory Defendants' failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of B.F.'s constitutional rights as described herein.

271.     The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

272.     The acts and/or omissions of the Supervisory Defendants caused B.F.'s damages in that she suffered extreme physical and mental pain and the lasting damage that she will endure in the future.

273.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against the District, the Board, Allison, and Grubbs.

### TWELFTH CAUSE OF ACTION
#### Premises Liability

274.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

275.     Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function pursuant to Ohio Revised Code 2744.02 (B)(4).

276.     Plaintiffs state that Defendants have custody and control over Middlebury school property.

277.     Plaintiffs state that B.F., as a student attending Middlebury, was an invitee included in the class of people Defendants expect to be on Middlebury school property.

278.     Plaintiffs state that Defendants owed B.F. a duty to exercise ordinary and reasonable care to keep the premises safe, and to protect B.F. from an unreasonable risk of physical harm.

279.     Plaintiffs state that each of the Defendants breached the duty of care owed to B.F. by not protecting her from an unreasonable risk of physical harm when Defendants authorized and/or approved and/or permitted Hendon to gain access to the building, and allow Hendon to interact with B.F. in an unsupervised location.

280.     Plaintiffs further state that Defendants' breach of the duty owed to B.F. proximately caused B.F.'s injuries.

281.     Accordingly, Defendants are liable to Plaintiffs, because by failing to keep the premises safe, their conduct falls outside of the protections afforded to them by the General Assembly, and such conduct caused injuries to Plaintiffs.

282.     **WHEREFORE**, Plaintiffs request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against all Defendants.

### THIRTEENTH CAUSE OF ACTION
**Assault**

283.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

284.    Hendon acted with the intent to create a state of fear or danger of harm or offensive contact with B.F.

285.    B.F. had a reasonable belief that she would be subject to harm or offensive contact by Hendon.

286.    B.F. experienced fear of such harm or offensive contact in response to Hendon's conduct.

287.    Hendon's conduct towards B.F. was harmful and offensive.

288.    As a direct and proximate cause of the foregoing actions by Hendon towards B.F., she has suffered damages.

289.    Defendants are vicariously liable for the assault.[3]

290.    **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain,

---

[3] Plaintiffs' assault claim is timely pursuant to R.C. § 2305.16.  Plaintiff B.F. is a minor child. Further, Plaintiff B.B. benefits from the Ohio tolling provisions which govern B.F.'s claims. A third-party's claims are tolled based on the disability of one party when the third-party's claims are "joint and inseparable" from the disabled party's claims. *Bauch v. Richland County Children Services*, 1:14CV2765 citing *Bishop v. Children's Center for Developmental Enrichment*, 618 F.3d 533, 538 (6th Cir.2010); R.C. § 2305.16. B.B.'s claims are integrally tied to B.F.'s, though they are "separate and distinct." *Id*.

40

suffering, inconvenience, mental anguish, and other nonpecuniary losses,

attorneys' fees, costs, and any other relief this Court may deem is fair and

equitable against all Defendants.

### FOURTEENTH CAUSE OF ACTION
**Battery**

291.    Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

292.    Upon information and belief, in his actions towards B.F., Hendon engaged in the

intentional touching of or application of force to his body and did so in a harmful

or offensive manner, and without consent.

293.    As a direct and proximate cause of the foregoing actions of Hendon towards B.F.,

she has suffered damages.

294.    Defendants are vicariously liable for battery.[4]

295.    **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,

punitive damages of $500,000.00, future pecuniary losses, emotional pain,

suffering, inconvenience, mental anguish, and other nonpecuniary losses,

attorneys' fees, costs, and any other relief this Court may deem is fair and

equitable against all Defendants.

---

[4] Plaintiffs' battery claim is timely pursuant to R.C. § 2305.16.  Plaintiff B.F. is a minor child.
Further, Plaintiff B.B. benefits from the Ohio tolling provisions which govern B.F.'s claims. A
third-party's claims are tolled based on the disability of one party when the third-party's claims
are "joint and inseparable" from the disabled party's claims. *Bauch v. Richland County Children
Services*, 1:14CV2765 citing *Bishop v. Children's Center for Developmental Enrichment*, 618
F.3d 533, 538 (6th Cir.2010); R.C. § 2305.16. B.B.'s claims are integrally tied to B.F.'s, though
they are "separate and distinct." *Id*.

## FIFTEENTH CAUSE OF ACTION
### Loss of Consortium

296.　　Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

297.　　As a direct and proximate result of the conduct of Defendants, B.B. and K.F., as

the parents and guardians of B.F. have been damaged due to the deprivation of the

services, society, companionship, comfort, love, solace and affection of B.F. and

is entitled to recover for her loss of consortium in an amount to be determined at

trial.

298.　　**WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,

punitive damages of $500,000.00, future pecuniary losses, emotional pain,

suffering, inconvenience, mental anguish, and other nonpecuniary losses,

attorneys' fees, costs, and any other relief this Court may deem is fair and

equitable against all Defendants.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by

jury in this action of all issues so triable.


Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

 /s/  Edward L. Gilbert
Edward L. Gilbert (0014544)
One Cascade Plaza, Suite 825
Akron, OH 44308
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com